**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.:** 1:11-cv-01110-RBJ-KMT

| | |
|---|---|
| SHIRE LLC, | ) |
| SUPERNUS PHARMACEUTICALS, INC., | ) |
| SHIRE DEVELOPMENT INC., | ) |
| SHIRE INTERNATIONAL LICENSING | ) |
| B.V., | ) |
| AMY F.T. ARNSTEN, PH.D., | ) |
| PASKO RAKIC, M.D., and | ) |
| ROBERT D. HUNT, M.D., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SANDOZ INC., | ) |
| | ) |
| Defendant. | ) |

**STATUS REPORT REGARDING CLAIM CONSTRUCTION**

In compliance with the Court's order, plaintiffs Shire LLC, Supernus Pharmaceuticals, Inc., Shire Development Inc., Shire International Licensing B.V., Amy F.T. Arnsten, Ph.D., Pasko Rakic, M.D., and Robert D. Hunt, M.D. (collectively "Plaintiffs") and defendant Sandoz, Inc. ("Sandoz") submit the following status report outlining claim terms to be submitted for construction and a proposed *Markman* briefing schedule. *See* Docket No. 48 (Minute Entry for Scheduling Conference), p. 2; Docket No. 49 (Scheduling Order), pp. 13-17; *see also* Docket No. 61 (Transcript of Scheduling Conference).

I.   **Proposed *Markman* Briefing Schedule**

   A.   **Plaintiffs Position**

Typically, there are two ways for a district court to have subject matter jurisdiction in a patent dispute. There can be an act of patent infringement, where a party makes, uses, offers for sale, sells or imports a patented invention. And, there can be an act giving rise to a court's jurisdiction under the declaratory judgment statute, such as when one party threatens another with a patent lawsuit.

The present suit is a special case of patent infringement. This case arises out of 21 U.S.C. § 355(j) (the "Hatch Waxman Act" or "the Act"). The Act extends a court's subject matter jurisdiction to define patent infringement as including the filing of an Abbreviated New Drug Application ("ANDA") seeking the FDA's approval to market a generic version of an established drug. *See* 35 U.S.C. § 271(e)(2); 21 U.S.C. § 355(b)(2). The Act imposes a statutory regime whereby "brand" drug makers with drugs covered by patents can litigate patent disputes with "generic" drug makers who want to introduce a generic version of an established drug. The Act provides incentives for both brands and generics to submit to the Act's regime. Importantly, the Act rewards a first ANDA filer. *See* 21 U.S.C. §355(j)(5)(B)(iv). A first ANDA filer is the first generic company to file an ANDA application on an established drug. The first filer is rewarded with a six month period where it is the only generic on the market. *Id*. This is significant because generics often immediately take a very large percentage of the market away from the brand, due to insurance company and other policies mandating the use of a generic if one is available. Once this six month period ends, other generics can enter the market and compete with the first filer (and also with the brand).

Sandoz, Inc. ("Sandoz") is not the first ANDA filer for a generic version of Plaintiffs' Intuniv®. Publicly available documents show that the first filer is Actavis. *See* D. Del. 1:10-cv-

00329-GMS, Docket No. 74, p. 4 n. 2.  As the first filer, Actavis has a financial incentive (a six month period of exclusivity under the Act) to press the case against Plaintiffs and go to market with a generic version of Intuniv®.  *See* 21 U.S.C. §355(j)(5)(B)(iv).  Actavis is a defendant, along with Anchen and Teva, in ongoing Hatch-Waxman Act litigation in the District of Delaware (*Shire et al. v. Teva et al.*, Civil Action No. 1:10-cv-00329-GMS (D. Del.); the "Delaware case").  In the Delaware case the parties have already completed claim construction (*Markman*) briefing.  *Markman* briefing in that case concluded on May 6, 2011.  *See* D. Del. 1:10-cv-00329-GMS, Docket Nos. 93, 95, 102, and 103.  There was a delay in that case of several months while the parties awaited the appointment of a judge to fill a vacancy on the Delaware bench.  On November 3, 2011, the U.S. Senate voted to confirm Richard G. Andrews, who is expected to take the bench immediately.  It is the parties' expectation that Judge Andrews will schedule a *Markman* hearing and issue a *Markman* order very shortly.

Moreover, there are two additional pending Intuniv® cases.  These are *Shire et al. v. Mylan et al.*, Civil Action No. 1:11-cv-00055-IMK (N.D.W.V.) (the "West Virginia case"), and *Shire et al. v. Impax et al.*, Civil Action No. 3:10-cv-05467-RS (N.D. Cal.) (the "California case").  In the West Virginia case, opening and responsive *Markman* briefs are scheduled for April 12, 2012 and May 10, 2012, respectively, with a *Markman* hearing scheduled for June 8, 2012.  The Court is scheduled to issue a *Markman* ruling on September 7, 2012.  *See* N.D.W.V. No. 11-cv-00055-IMK, Docket No. 37 at 2-3.  In the California case, opening, opposing, and reply *Markman* briefs are scheduled for March 30, 2012, April 20, 2012, and May 4, 2012, respectively, with a *Markman* hearing scheduled for May 30, 2012.  *See* N.D. Cal. No. 10-cv-05467 Docket No. 106 at 3; Docket No. 119 at 3.  The *Markman* ruling is expected to follow shortly after the hearing.

Finally, there is a statutory period that is relevant to the pace at which this Court moves the present case. The Federal Food, Drug, and Cosmetic Act ("FFDCA") gives Plaintiffs a period of market exclusivity for Intuniv®. *See* 21 U.S.C. §§ 355(c)(3)(E) and 355(j)(5)(F). Under the FFDCA, Plaintiffs are guaranteed "FDA exclusivity" until September 2, 2012. *See Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations*, Patent and Exclusivity Data for Appl. No. 022037. This period of FDA exclusivity is independent of Plaintiffs' patent rights. This means that, at a minimum, Plaintiffs are entitled to be free from generic competition until at least this date. It also means that there is no prejudice to Sandoz if Sandoz's substantive rights are addressed prior to September 2, 2012, which would be the case under Plaintiffs' proposed *Markman* schedules outlined below.

**Current Intuniv® *Markman* Schedule**

The current schedule for *Markman* submissions and rulings, and the relevant statutory periods in the Intuniv® cases, is summarized in the chart below:

| Event State | **Colorado (the instant case)** | Delaware | West Virginia | California |
|---|---|---|---|---|
| Opening Markman Briefs | **Not set** | April 15, 2011 | April 12, 2012 | March 30, 2012 |
| Response Briefs | **Not set** | May 6, 2011 | May 10, 2012 | April 20, 2012 |
| Reply Briefs | **Not set** | n/a | n/a | May 4, 2012 |
| Hearing Date | **Not set** | Not scheduled | June 8, 2012 | May 30, 2012 |
| Expected Markman Ruling Date | **Not set** | In the next few months | September 7, 2012 (per scheduling order) | July 30, 2012 |
| FDA Exclusivity for Intuniv® Ends | September 2, 2012 | | | |

In light of the foregoing, Plaintiffs propose a *Markman* briefing schedule that allows this Court to have the benefit of *Markman* rulings expected in the other Intuniv® cases pending in Delaware, West Virginia and California.  Sandoz's rights will not be adversely affected by this modest delay because, regardless of the outcome of this litigation, Sandoz cannot go to market with a generic form of Intuniv® until at the earliest September 2, 2012 (the end of Plaintiffs' FDA exclusivity period).

As such, Plaintiffs respectfully submit that a *Markman* order in this case should follow at least the first *Markman* order to issue in the Delaware, West Virginia and California cases.  One option, therefore, would be for the Court to defer scheduling *Markman* briefing in this case until there is a *Markman* ruling in the Delaware case (the first case in which a *Markman* ruling is expected).

Allowing one of the other courts to construe the claim terms first would have advantages for all parties (and as mentioned would not adversely impact Sandoz's rights).  Among other things, allowing another District Court to construe the claims would avoid the risk of conflicting claim constructions for the same terms of the same patents.  This Court has addressed the complex and unsettled legal issue whether a claim construction from one district court has collateral estoppel effects in actions in other district courts:

> Neither *Markman* nor the Federal or the Tenth Circuits has directly addressed the issue whether a *Markman* ruling is a final judgment for purposes of collateral estoppel . . . .  Several district courts, however, have discussed and taken opposite positions regarding the application of collateral estoppel when dealing with other courts' claim construction.

*See Shire LLC v. Sandoz, Inc.*, Civil Action No. 07–cv–00197–EWN–CBS, 2008 WL 4402251 at *5-7 (D.Colo. Sept. 24, 2008). If this Court's *Markman* order is consistent with prior order(s), then this complex legal issue may be avoided.

Another option would be for the Court to adopt a *Markman* schedule that tracks the schedule in the West Virginia case (which currently has the latest opening *Markman* briefing date). By following the West Virginia schedule, the Court (and the parties) would be likely to have the benefit of a *Markman* ruling in Delaware, and Sandoz would be in no worse position than Mylan (the defendant in the West Virginia case; another generic who was not first to file). Therefore, if the Court prefers not to wait to schedule *Markman* briefing until after an order issues in the Delaware case, Plaintiffs propose that the parties submit opening claim construction briefs on April 12, 2012 and rebuttal claim construction briefs on May 10, 2012—the same dates as in the West Virginia case—and that the Court postpone issuing a *Markman* order at least until after a *Markman* order in Delaware, West Virginia or California.

**B.     Defendant's Position**

Plaintiffs' request for this Court to put off scheduling claim construction proceedings is unnecessary, denies Sandoz an opportunity to move this case to completion in a reasonably timely manner, and is part of Plaintiffs' overall campaign to delay generic entry for as long as possible in all jurisdictions. Sandoz objects to Plaintiffs' *de facto* stay of the present litigation because it would be prejudiced in at least the following ways:

(1) Sandoz is not a party to the Delaware, West Virginia or California litigations and therefore has no input regarding those proceedings. If Sandoz is held to the outcome of those proceedings, even at the *Markman* stage, Sandoz will be denied due process. Further, Sandoz has asserted counterclaims that are not at issue in at least the Delaware and West Virginia cases. Accordingly, the Sandoz case must proceed independently of the other cases. Magistrate Judge

Tafoya has already rejected any protocol in which Sandoz would be bound by what occurred in Shire's litigations in Delaware, West Virginia and California. [8/22/2011 Sch. Conf. Tr. 6:13 to 12:22].

(2) Given the nature of the confidential information concerning each defendant's products in each of the separate law suits, Sandoz would not be able to properly ascertain or analyze the issues in the Delaware, West Virginia and California litigations. As a result of the fact that each generic drug company may have a distinct proposed drug formulation, Plaintiffs may have asserted different patents and different claims against different defendants. Consequently, differing claim terms may be at issue in each litigation and the parties may propose claim constructions based on a particular generic drug formulation. Additionally, in some instances, parties may agree on the meaning of a particular claim without briefing due to the specifics of any particular generic formulation. Accordingly, it is unlikely that all parties to these litigations, litigations Plaintiffs selected to bring in various jurisdictions, will agree on the meaning of each claim term. Thus, Sandoz should be given a full opportunity to advocate for the meanings of the terms asserted in the case before this Court.

(3) As admitted by counsel for Shire, it is impossible to predict when a *Markman* ruling will be issued in the Delaware, West Virginia or California litigations, as court schedules are subject to frequent changes and delay. This is particularly true with regard to the Delaware case, which is still awaiting a permanent judge assignment and has been delayed for over six months. [8/22/2011 Sch. Conf. Tr. 28:12 to 30:14]. Indeed, in view of the judicial vacancy in Delaware and the *Markman* schedules set in West Virginia and California, it is possible that this Court could issue a claim construction order before any of the other courts. Additionally, as Shire pointed out to this Court in a prior case in which Shire argued *against* the application of another

court's claim construction, "claim construction . . . can be done on a rolling basis" during which a court may modify its claim construction later in the proceedings, such as at trial. Rpt. Tr. of Final Pretrial Conf., *Shire LLC v. Sandoz, Inc.*, No. 07–cv–00197–EWN–CBS (D. Colo. Oct. 22, 2008), Doc. No. 176, at 4:24 - 5:1. Thus, asking this Court to wait indefinitely for non-final *Markman* rulings from Delaware, West Virginia and/or California that could be modified at any time before those cases are over is simply a way for Plaintiffs to unnecessarily put this case on hold. Contrary to Plaintiffs' assertions, such delay will prejudice Sandoz, who simply seeks a *Markman* ruling in this Court—where Plaintiffs chose to sue Sandoz—that will allow a final decision with respect to the three patents-in-suit in a reasonably timely manner.

Plaintiffs opted to sue Sandoz in Colorado, as opposed to Delaware, West Virginia or California, where the other INTUNIV® cases are pending. Plaintiffs now seek to use their multiple-venue strategy for delay.[1] Sandoz proposes a schedule that will allow for a reasonably timely resolution to <u>this</u> lawsuit. Sandoz simply wishes to proceed to the next stage of this litigation. Plaintiffs' discussions of FDA exclusivities and marketing approval are not relevant to the Court's request for a Joint Status Report proposing a *Markman* schedule and list of claim terms for construction. Sandoz's proposed schedule will not prejudice Plaintiffs, as Plaintiffs have already completely briefed their claim construction positions in the Delaware case. Sandoz therefore proposes the following *Markman* schedule:

**Defendant's Proposed Claim Construction Schedule**

---

[1] Plaintiffs have already requested three deadline extensions for exchanges and filings that should have been easily completed within the time allotted by the Court and the Federal Rules of Civil Procedure. However, Sandoz granted those requests in good faith, despite the fact that Shire appears to be seeking any and all opportunities to prevent this litigation from proceeding according to the Court's schedule. Furthermore, Plaintiffs have yet to produce any documents in this case, despite the fact that Sandoz has agreed to several iterations of an electronic discovery stipulation.

| Date | Event |
|---|---|
| September 22, 2011 | Disclosure of Asserted Claims |
| November 28, 2011 | Exchange Proposed Claim Terms for Construction |
| January 6, 2012 | Exchange Preliminary Claim Constructions and Extrinsic Evidence |
| February 3, 2012 | Claim Construction Opening Briefs |
| February 10, 2012 | Close expert discovery related to claim construction |
| March 16, 2012 | Claim Construction Response Briefs |
| March 23, 2012 | Joint Claim Construction and Prehearing Statement |
| March 23, 2012 | Propose Claim Construction Hearing Date to Court |

## II.     Plaintiffs' Preliminary List of Claim Terms in Need of Constructions

Plaintiffs submit the following preliminary, non-binding list of terms that may require court construction.

| Patent | Claim(s) | Term |
|---|---|---|
| 5,854,290 | 1-6 | treating a behavioral disinhibition |
| 5,854,290 | 7-12 | inhibiting a disinhibitory behavior |
| 5,854,290 | 1-12 | a behavior inhibiting dose of guanfacine |
| 5,854,290 | 1-12 | without inducing excessive sedation |
| 5,854,290 | 2, 8 | readministering the dose at an interval required to obtain a desired level and duration of behavioral inhibition |
| 5,854,290 | 1-12 | primate |
| 5,854,290 | 1-4, 6-10, 12 | the dose ranges between 0.01 mg/kg of body weight and 0.86 mg/kg of body weight |
| 5,854,290 | 5, 11 | the dose ranges between 0.03 mg/kg of body weight and 0.25 mg/kg of body weight |
| 6,287,599 | 1-30 | pharmaceutically active agent that is pH dependent |
| 6,811,794 | 3-12 | pharmaceutically active agent that is pH dependent |
| 6,811,794 | 3-12 | guanfacine |
| 6,287,599 | 18 | said pharmaceutically active agent is present in the composition in an amount of from about 0.1 wt. % to about 70 wt. % |
| 6,287,599 | 19 | said pharmaceutically active agent is present in the composition in an amount of from about 1 wt. % to about 40 wt. % |
| 6,287,599 | 20 | said non-pH dependent sustained release agent is present in the composition in an amount of from about 5 wt. % to about 50 wt. % |
| 6,287,599 | 21 | said non-pH dependent sustained release agent is present in the composition in an amount of from about 10 wt. % to about 30 wt. % |
| 6,287,599 | 22 | said at least one pH dependent agent is present in the composition in an amount of from about 0.5 wt. % to about 40 wt. % |
| 6,287,599 | 23 | said at least one pH dependent agent is present in the composition in an amount of from about 1 wt. % to about 20 wt. % |

| Patent | Claim(s) | Term |
|---|---|---|
| 6,287,599 | 1-30 | non-pH dependent sustained release agent |
| 6,811,794 | 3-12 | non-pH dependent sustained release agent |
| 6,287,599 | 1-30 | pH dependent agent that increases the rate of release of said pharmaceutically active agent from the tablet at pH in excess of 5.5 |
| 6,811,794 | 3-12 | pH dependent agent that increases the rate of release of said at least one pharmaceutically active agent from a tablet dosage form at pH in excess of 5.5 |
| 6,287,599 | 2, 9, 28 | polymer that swells at a pH in excess of 5.5 |
| 6,811,794 | 4-5, 9-10 | polymer that swells at a pH in excess of 5.5 |
| 6,287,599 | 3, 10, 29 | enteric agent |
| 6,811,794 | 6-7, 11-12 | enteric agent |
| 6,287,599 | 4, 11-12, 14 | agent that increases the solubility of said at least one pharmaceutically active agent at a pH of greater than 5.5 |
| 6,287,599 | 13 | agent that maintains an acidic microenvironment in the composition |
| 6,811,794 | 8-12 | reducing the likelihood of side effects associated with the administration of guanfacine |

The above list of proposed claim terms is preliminary and non-binding. Plaintiffs reserve the right to supplement or amend this list, including through the addition or removal of terms.

### III. Defendant's Preliminary List of Claim Terms in Need of Constructions

**U.S. Patent No. 5,854,290**[2]

| Claim(s) | Term |
|---|---|
| 1-6 | "treating a behavioral inhibition" |
| 1-12 | "primate" |
| 1-12 | "a behavior inhibiting dose of guanfacine" |
| 5, 11 | "the dosage ranges between 0.03 mg/kg of body weight and 0.25 mg/kg of body weight" |
| 1-12 | "without inducing excessive sedation" |
| 2, 8 | "readministering the dose at an interval required to obtain a desired level and duration of behavioral inhibition" |
| 1-4, 6-10, 12 | "the dosage ranges between 0.01 mg/kg of body weight and 0.86 mg/kg of body weight" |
| 7-12 | "inhibiting a disinhibitory behavior" |

**U.S. Patent No. 6,287,599**[3]

---

[2] Shire has asserted claims 1, 2, 4-8, and 10-12 of the '290 patent against Sandoz.
[3] Shire has asserted claims 1, 3-6, 8, 10-23, 25, 29, and 30 of the '599 patent against Sandoz.

| Claim(s) | Term |
|---|---|
| 1-30 | "pharmaceutically active agent that is pH dependent" |
| 1-30 | "non-pH dependent sustained release agent" |
| 1-30 | "pH dependent agent that increases the rate of release of said pharmaceutically active agent from the tablet at a pH in excess of 5.5" |
| 2, 9, 28 | "polymer that swells at a pH in excess of 5.5" |
| 3, 10, 29 | "enteric agent" |
| 4, 11-12, 14 | "agent that increases the solubility of at least one pharmaceutically active agent at a pH of greater than 5.5" |
| 13 | "agent that maintains an acidic microenvironment in the composition" |
| 5-7 | "guanfacine hydrochloride" |
| 11-12, 14 | "organic acid" |
| 15-17 | "binding agent" |
| 8, 17, 24-27 | "hydroxypropyl methylcellulose" |
| 10, 29 | "methacrylic acid copolymer" |
| 18 | "said pharmaceutically active agent is present in the composition in an amount of from about 0.1 wt. % to about 70 wt. %" |
| 19 | "said pharmaceutically active agent is present in the composition in an amount of from about 1 wt. % to about 40 wt. %" |
| 20 | "said non-pH dependent sustained release agent is present in the composition in an amount of from about 5 wt. % to about 50 wt. %" |
| 21 | "said non-pH dependent sustained release agent is present in the composition in an amount of from about 10 wt. % to about 30 wt. %" |
| 22 | "said at least one pH dependent agent is present in the composition in an amount of from about 0.5 wt. % to about 40 wt. %" |
| 23 | "said at least one pH dependent agent is present in the composition in an amount of from about 1 wt. % to about 20 wt. %" |

## U.S. Patent No. 6,811,794[4]

| Claim(s) | Term |
|---|---|
| 3-12 | "guanfacine" |
| 3, 8 | "hydroxypropyl methylcellulose" |
| 7, 12 | "methacrylic acid copolymer" |
| 3-12 | "pharmaceutically active agent that is pH dependent" |
| 3-12 | "pH dependent agent that increases the rate of release of said at least one pharmaceutically active agent from a tablet dosage form at a pH in excess of 5.5" |
| 3, 6, 7 | "an amount effective to treat said attention deficit disorder or attention deficit with hyperactivity disorder in said patient" |

---

[4] Shire has asserted claims 3, 6-8, 11, and 12 of the '794 patent against Sandoz.

| 6-7, 11-12 | "enteric agent" |
|---|---|
| 8-12 | "reducing the likelihood of side effects associated with the administration of guanfacine" |
| 4-5, 9-10 | "polymer that swells at a pH in excess of 5.5" |
| 3-12 | "non-pH dependent sustained release agent" |

The above list of proposed claim terms is preliminary and non-binding.  Defendant reserves the right to supplement or amend this list, including through the addition or removal of terms.

Respectfully submitted,

|  |  |
|---|---|
|  | DAVIS GRAHAM & STUBBS LLP |
| *Of Counsel:* | By: /s Thomas C. Bell |
| Edgar H. Haug | Thomas C. Bell |
| Sandra Kuzmich, Ph.D. | 1550 Seventeenth St. |
| Elizabeth Weiskopf | Suite 500 |
| Rami Bardenstein | Denver, Colorado 80202 |
| Frommer Lawrence & Haug LLP | Email: tom.bell@dgslaw.com |
| 745 Fifth Avenue | Telephone: (303) 892-9400 |
| New York, New York 10151 | Facsimile: (303) 893-1379 |
| Tel: (212) 588-0800 | *Attorneys for Plaintiffs and* |
| Fax: (212) 588-0500 | *Counterclaim Defendants* |
| ehaug@flhlaw.com | *Shire LLC,* |
| skuzmich@flhlaw.com | *Supernus Pharmaceuticals, Inc.,* |
| eweiskopf@flhlaw.com | *Shire Development Inc.,* |
| rbardenstein@flhlaw.com | *Shire International Licensing B.V.,* |
|  | *Amy F.T. Arnsten, Ph.D.,* |
|  | *Pasko Rakic, M.D., and* |
|  | *Robert D. Hunt, M.D.* |

Edward C. Stewart
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Telephone:  303.244.1800
Facsimile:  303.244.1879
E-mail:    stewart@wtotrial.com

and

Richard T. Ruzich
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone:  312.499.6783
Facsimile:  312.896.5652
Email:   rtruzich@duanemorris.com

*Attorneys for Defendant Sandoz Inc.*

Dated:  November 28, 2011

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 28, 2011, I electronically filed the foregoing **STATUS REPORT REGARDING CLAIM CONSTRUCTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Edward C. Stewart, Esq.
Theresa R. Wardon, Esq.
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, CO  80202

Richard T. Ruzich, Esq.
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL  60603-3433

Laura A. Vogel, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA   02210-2243

Matthew C. Mousley, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196

                                                    *s/ Thomas C. Bell*