## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.:** 1:11-cv-01110-RBJ-KMT

SHIRE LLC, )
SUPERNUS PHARMACEUTICALS, INC., )
SHIRE DEVELOPMENT INC., )
SHIRE INTERNATIONAL LICENSING )
B.V., )
AMY F.T. ARNSTEN, PH.D., )
PASKO RAKIC, M.D., and )
ROBERT D. HUNT, M.D., )
    )
                Plaintiffs, )
    )
        v. )
    )
SANDOZ INC., )
    )
           Defendant. )

## PLAINTIFFS' REBUTTAL CLAIM CONSTRUCTION BRIEF

2119712.1

## TABLE OF CONTENTS

I.    Introduction ................................................................................................1

II.   Argument ....................................................................................................1

    A.    General Claim Construction Principles .................................................1

    B.    The '290 Patent.....................................................................................2

        1.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "without inducing excessive sedation" ...................................................................................2

        2.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "readministering the dose at an interval required to obtain a desired level and duration of behavioral inhibition" ...............................................................5

        3.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "inhibiting a disinhibitory behavior".....................6

        4.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "a behavior inhibiting dose of guanfacine" ...............................................................................6

        5.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "treating a behavioral disinhibition" .................7

    C.    The '599 and '794 Patents .....................................................................8

        1.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "pH dependent agent that increases the rate of release of said at least one pharmaceutically active agent from the tablet at a pH in excess of 5.5"...............................8

        2.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "polymer that swells at a pH in excess of 5.5" ...........................................................................10

        3.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "agent that increases the solubility of said at least one pharmaceutically active agent at a pH of greater than 5.5"........................................................................10

        4.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "agent that maintains an acidic microenvironment in the composition" .....................................11

5.     The Court Should Reject Sandoz's Proposed Construction
       for the Disputed Term "reducing the likelihood of side
       effects associated with the administration of guanfacine"..........................12

6.     The Court Should Reject Sandoz's Proposed Construction
       for the Disputed Term "pharmaceutically active agent that
       is pH dependent"..........................................................................................12

7.     The Court Should Reject Sandoz's Proposed Construction
       for the Disputed Terms Relating to "about percentage
       weights"........................................................................................................13

III.    Conclusion .........................................................................................................13

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)............................................................. 1

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)............................................................. 1

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)........................................................... 1

*Quigley Corp. v. Gumtech, Inc.*,
    No. 99-5577, 2000 U.S. Dist. LEXIS 2486, *16 (E.D. Pa. Mar. 9, 2009)......................... 2

*SEZ AG*,
    No. 07-1969, 2008 U.S. Dist. LEXIS 48774, at *16 (E.D. Pa. June 26,
    2008) ..................................................................................... 1

## I. Introduction

This Court should adopt the claim constructions proposed by Plaintiffs Shire LLC; Supernus Pharmaceuticals, Inc.; Shire Development Inc.; Shire International Licensing B.V.; Amy F.T. Arnsten, Ph.D.; Pasko Rakic, M.D.; and Robert D. Hunt, M.D. (collectively "Plaintiffs"). Contrary to well-settled principles of claim construction, Sandoz Inc. ("Sandoz") seeks to improperly add limitations to the disputed term's plain language, either from the specification or from extrinsic evidence. Plaintiffs' proposed constructions, on the other hand, are consistent with each term's plain language, the ordinary meaning of the term, and the teachings of the patent specifications.

## II. Argument

### A. General Claim Construction Principles

The Federal Circuit has strongly condemned limiting claims to particular embodiments in the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005); *see also SEZ AG v. Solid State Equip. Corp.*, No. 07-1969, 2008 U.S. Dist. LEXIS 48774, at *16 (E.D. Pa. June 26, 2008). Claims may only be limited by the specification when the specification contains "words or expressions of manifest exclusion or restriction." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010). This means that the specification must affirmatively disavow additional claim scope. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 907-08 (Fed. Cir. 2004) ("[T]his court [has] interpreted . . . pertinent claim language narrowly, not merely because the specification did not describe a broader embodiment, but because the specification, claim, or prosecution history made clear that the invention was limited to a particular structure.").

Without such a disclaimer, claim scope is not to be limited even if the specification has an otherwise narrow disclosure. *See id.* at 906; *see also SEZ AG*, 2008 U.S. Dist. LEXIS 48774,

at \*16, \*33 (refusing to limit term reciting a "sharp edge" to specific angles disclosed in the specification); *Quigley Corp. v. Gumtech, Inc.*, No. 99-5577, 2000 U.S. Dist. LEXIS 2486, \*16, \*26 (E.D. Pa. Mar. 9, 2009) (holding that claim term requiring application of medicine to the oral mucosa did not exclude medication delivered through nasal pump).

**B.     The '290 Patent**

**1.     The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "without inducing excessive sedation"**

| "without inducing excessive sedation" | |
|---|---|
| **Plaintiffs** | **Sandoz** |
| without inducing sedation to an extent that impairs functioning | without inducing as much sedation as clonidine |

Sandoz proposes that the '290 patent claim term "without inducing excessive sedation" include a comparison with clonidine's sedative effects.[1]  However, the word clonidine appears nowhere in the claim; and there is no suggestion of any comparison.

Sandoz's construction improperly attempts to import a limitation from the specification into the claims.  The '290 patent merely discloses clonidine as an example of a drug that can causes excessive sedation in some instances,[2] and compares, at times, the sedative effects of guanfacine to those of clonidine.  But that does not define "excessive sedation" itself.

Importantly, the '290 patent discloses that clonidine produces various levels of sedation and does not state that clonidine always causes excessive sedation.  For example, the '290 patent notes that "moderate [doses] of clonidine (about 0.01-0.05 mg/kg) improve working memory

---

[1] D.I. 90 at 11-15.

[2] Braunel Decl. Ex. 1, '290 patent col. 2, ll. 14-17.  (We refer throughout this brief to the exhibits submitted as part of Plaintiffs' Opening Brief and to the parties respective Opening Briefs).

performance in aged monkeys <u>without</u> hypotensive or sedative effects."[3]  These data indicate

that, depending on the dosage, clonidine does not produce sedative effects, let alone "excessive

sedation."  Of course, depending on the dosage, clonidine can also produce "marked sedation" or

"significant sedation."[4]  Thus, a skilled artisan would <u>not</u> understand the '290 patent to define

"excessive sedation" as the level of sedation necessarily associated with clonidine

administration.

Ambiguity in the definition of "excessive sedation" is avoided by construing the term

consistent with the disclosure of the '290 patent.  The patent states that excessive sedation "itself

often interfered with academic performance and other activities."[5]  The skilled artisan would

understand that excessive sedation is impairment of functioning.  The '290 patent also discloses

data from a study involving the administration of guanfacine, whereby the patients were

described as "neither sedated nor impaired in functioning"[6] -- meaning that guanfacine did not

cause either sedation or "excessive sedation" (*e.g.*, impairment of functioning).

Sandoz distorts this statement from the '290 patent specification by improperly conflating

the word "sedation" into the very different words "excessive sedation".  Starting from this false

premise, Sandoz concludes that "'<u>excessive</u> sedation' and 'impaired in functioning' are used in

th[is] … sentence in a way that demonstrates that the patentees treated them as distinct."[7]

(emphasis added).  Again, this is belied by the very phrase in the patent.

---

[3] Braunel Decl. Ex. 1, '290 patent col. 2, ll. 41-43 (emphasis added).
[4] Braunel Decl. Ex. 1, '290 patent col. 6, ll. 52-61.
[5] Braunel Decl. Ex. 1, '290 patent col. 2, ll. 25-27.
[6] Braunel Decl. Ex. 1, '290 patent col. 8, ll. 45-48.
[7] D.I. 90 at 13.

The phrase -- read properly -- supports Plaintiffs' construction exactingly.  Patients treated with guanfacine were neither of two distinct possibilities: "sedated" nor "impaired in functioning" ("excessively sedated").

The prosecution history similarly does not support Sandoz's construction.  Sandoz quotes out of context from the prosecution history:

> [t]he present invention features the use of guanfacine . . . for reduction of disinhibitory behaviors without inducing excessive sedation. This method provides an alternative to using the **nonselective** alpha-2 agonist, clonidine, which causes sedation.[8]

Notably, Sandoz omits that guanfacine is "an alpha-2A **selective** agonist."[9]  Sandoz's truncated quotation fails to reveal that the applicants focused on the mechanism of action—selective versus non-selective agonists—not the levels of sedation.

Neither the specification nor the prosecution history supports incorporating a limitation based on clonidine into the term "without inducing excessive sedation."  By contrast, the intrinsic record demonstrates that this term means "without inducing sedation to an extent that impairs functioning."

---

[8] D.I. 90 at 14 (emphasis added).
[9] D.I. 90, DA H, Sept. 2, 1997 Response to Office Action at 3 (emphasis added).

**2.     The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "readministering the dose at an interval required to obtain a desired level and duration of behavioral inhibition"**

| "readministering the dose at an interval required to obtain a desired level and duration of behavioral inhibition" | |
|---|---|
| **Plaintiffs** | **Sandoz** |
| administering an amount of guanfacine multiple times within a single day or on multiple days to obtain a desired degree and length of time of **improvement of self-control of behavior** | administering an amount of guanfacine multiple times within a single day or on multiple days to obtain a desired degree and length of time of improvement of **behavioral disinhibition** |

Sandoz's proposed construction for this term fails to define a key phrase in the patent: "behavioral inhibition."[10]  Plaintiffs construe this phrase to mean "improvement of self-control of behavior."[11]  The plain language of the claims containing this phrase, together with the patent's specification, supports Plaintiffs' construction.  See Plaintiffs Opening Claim Construction Brief at 20-21.

Defendant Sandoz's construction provides no construction in this regard and thus should be rejected.

---

[10] D.I. 90 at 16 (replacing "behavioral inhibition" with another claim term, improvement of "behavioral disinhibition").

[11] D.I. 89 at 20.

3.   **The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "inhibiting a disinhibitory behavior"**

| "inhibiting a disinhibitory behavior" | |
|---|---|
| **Plaintiffs** | **Sandoz** |
| improving any symptom associated with <u>**lack of self-control of behavior**</u>, such symptoms including but not limited to agitation, hyperactivity, distractibility, inattention, impulsivity, disorganization, uncontrolled aggression, self-mutilation, and uncontrolled movements | <u>**retarding, arresting or restraining**</u> a <u>**behavioral disinhibition symptom**</u>, such symptom including but not limited to agitation, hyperactivity, distractability, inattention, impulsivity, disorganization, uncontrolled aggression, self-mutilation, or uncontrolled movements<br><br>Note: Sandoz agrees to change "retarding, arresting or restraining" to "improving" |

As with the preceding claim term, Sandoz's construction of this term fails to define an important phrase, namely, "disinhibitory behavior."[12]  Plaintiffs construe this phrase to mean the "lack of self-control of behavior."[13]  *See* Pltfs Opening Brief at 20-22.  As above, Plaintiffs construction is superior and should be adopted.

4.   **The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "a behavior inhibiting dose of guanfacine"**

| "a behavior inhibiting dose of guanfacine" | |
|---|---|
| **Plaintiffs** | **Sandoz** |
| an amount of guanfacine that improves self-control of behavior | plain meaning, i.e., an amount of guanfacine that improves behavioral disinhibition |

As with the preceding two claim terms, Sandoz construes this term to be "an amount of guanfacine that improves behavioral disinhibition."[14]  By doing so, Sandoz has merely

---

[12] D.I. 90 at 10 (replacing "disinhibitory behavior" with "behavioral disinhibition symptom").
[13] D.I. 89 at 22.
[14] D.I. 90 at 10.

substituted an unconstrued claim term—"behavioral disinhibition"—into this disputed claim

term. Plaintiffs' construction, on the other hand, provides the Court with a plain and ordinary

definition of the disputed term: "an amount of guanfacine that improves self-control of

behavior."[15] The '290 patent's claims and specification support Plaintiffs' construction. Sandoz

construction avoids defining a necessary phrase within this claim term only adds ambiguity to

the term.

**5.      The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "treating a behavioral disinhibition"**

| "treating a behavioral disinhibition" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| treating a disorder having prominent symptoms of **lack of self-control of behavior** including but not limited to Attention-Deficit Hyperactivity Disorder, Conduct Disorder, Oppositional Defiant Disorder, Tourette's Syndrome, Lesch-Nyhan Syndrome, or the | **combating or curing** a disorder having prominent symptoms of **behavior disinhibition**, such disorders including but not limited to Attention-Deficit Hyperactivity Disorder, Conduct Disorder, Oppositional Defiant Disorder, Tourette's Syndrome, Lesch- |
| lack of self-control of behavior accompanying Post-Traumatic Stress Disorder or Dementia | Nyhan Syndrome, Post-Traumatic Stress Disorder or dementia<br><br>Note: Sandoz agrees to change "combating or curing" in its construction to "treating" |

Yet again defendant Sandoz's construction does not actually construe the terms at issue.

For the same reasons stated above, Plaintiffs construction properly defines the term (behavioral

disinhibition is lack of self control) consistent with the claim language and the specification. *See*

Pltfs Opening Brief at 20-24. Thus, this Court should reject Sandoz's ambiguous construction of

this term, which would inevitably require further construction.

---

[15] D.I. 89 at 23.

C.    **The '599 and '794 Patents**

1.    **The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "pH dependent agent that increases the rate of release of said at least one pharmaceutically active agent from the tablet at a pH in excess of 5.5"**

| "pH dependent agent that increases the rate of release of said at least one pharmaceutically active agent from the tablet at a pH in excess of 5.5" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| agent that increases the rate of release of the pharmaceutically active agent from a tablet in an environment that has a pH above 5.5 relative to an environment that has a pH of 5.5 or below | a substance that increases the rate of release of a pharmaceutically active agent from a composition in surrounding media having a pH above 5.5 |

Sandoz's proposed construction for this term reads "pH dependent agent" out of the claim. Sandoz proposes that the Court construe the term as "a substance that increases the rate of release of a pharmaceutically active agent from a composition in surrounding media having a pH above 5.5."[16] Plaintiffs construe the term as an: "agent that increases the rate of release of the pharmaceutically active agent from a tablet in an environment that has a pH above 5.5 <u>relative to an environment that has a pH of 5.5 or below</u>."[17] Sandoz disputes comparing the dissolution rate at a pH exceeding 5.5 with a pH at or below 5.5.[18]

Sandoz states that the

"proper comparison is not between drug release rates at pH above and below pH 5.5. The proper comparison is done at 'pH in excess of 5.5,' as recited in the claim, and is between a composition with and without the recited 'pH dependent agent.'"[19]

---

[16] D.I. 90 at 19.

[17] D.I. 89 at 25 (emphasis added).

[18] D.I. 90 at 19.

[19] D.I. 90 at 19-20.

However, the claim speaks of a "pH dependent agent" -- one having varying effects at varying pH.

Sandoz also incorrectly claims that, if the

> "presence of the recited 'pH dependent agent' caused faster drug release at pH in excess of 5.5 than at pH 5.5 or below, as Plaintiffs propose, then the composition would not function for its intended purpose"[20]

The intended purpose, of course, is having a pH independent or minimized pH dependent dissolution profile.

This misperceives the present invention.  Guanfacine has difficulty dissolving in higher pH media -- hence it needs more help dissolving at higher pHs than at lower pHs.  The "pH dependent agents" of the invention may accomplish this -- tending to even out the overall dissolution profile -- by having differential effects at different pHs.

Thus, the patent shows that pH-dependent agents may have limited effects below pH 5.5,[21] but have greater effects (increasing release rate) above pH 5.5.[22]  At lower pH levels, the agent may not increase the dissolution profile, while at higher pH levels the agent successfully increases dissolution[23] -- thus "catching up" the high-pH slow dissolution to some extent.

Plaintiffs' construction is correct and, contrary to Sandoz's contention, does not exclude any embodiment of the invention contained in the patents' specifications.

---

[20] D.I. 90 at 20.
[21] D.I. 89 at 30.
[22] D.I. 89 at 30.
[23] D.I. 89 at 30.

**2.     The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "polymer that swells at a pH in excess of 5.5"**

| "polymer that swells at a pH in excess of 5.5" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| molecule with many units joined to each other through chemical covalent bonds, often in a repeating manner, which expands in an environment which has a pH above 5.5 relative to an environment which has a pH of 5.5 or below | plain meaning, i.e., a molecule with many units joined to each other through chemical covalent bonds, often in a repeating manner, which expands in surrounding media having a pH above 5.5 |

As with the above term, Sandoz disagrees with Plaintiffs' construction of "polymer that swells at a pH in excess of 5.5" because Plaintiffs' construction recites "… relative to an environment which has a pH of 5.5 or below."[24]  Sandoz's arguments again read "pH dependent" out of the patents' claims and should be rejected.

**3.     The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "agent that increases the solubility of said at least one pharmaceutically active agent at a pH of greater than 5.5"**

| "agent that increases the solubility of said at least one pharmaceutically active agent at a pH of greater than 5.5" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| agent that increases the amount of the pharmaceutically active agent that will dissolve in a given amount of another substance in an environment which has a pH above 5.5 relative to an environment which has a pH of 5.5 or below | a substance that increases the amount of a pharmaceutically active agent that will dissolve when the surrounding media has a pH above 5.5 |

Here again, Sandoz's construction reads the "pH dependent" nature of the claim term out and is not consistent with the patents' embodiments and its purpose to create pH-independent or

---

[24] D.I. 90 at 22.

minimally pH dependent release.[25]   Accordingly, the Court should reject its proposed

construction for this and the preceding terms.

> **4.    The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "agent that maintains an acidic microenvironment in the composition"**

| "agent that maintains an acidic microenvironment in the composition" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| agent that imparts an acidic character to the regions immediately around or in close proximity to the pharmaceutically active agent in the composition | a substance that imparts a greater acidic character in the regions immediately around or in close proximity to a pharmaceutically active substance than that of the surrounding media |

Sandoz's proposed construction here violates the cardinal rule of claim construction that

additional limitations shall not be added to the words of the claims.  In contrast to simply

providing a definition for the words in the claim, Sandoz actually adds new requirements:

positing that the acidic microenvironment needs to be more acidic than the regions outside the

microenvironment.  But the claim contains no such limitation.  Sandoz's construction should be

rejected.

---

[25] D.I. 90 at 23.

5.  **The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "reducing the likelihood of side effects associated with the administration of guanfacine"**

| "reducing the likelihood of side effects associated with the administration of guanfacine" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| reducing the probability of side effects resulting from guanfacine administration | decreasing the incidence or severity of side effects compared to administering the same amount of guanfacine as an immediate-release composition |

Sandoz's proposed construction for the disputed term "reducing the likelihood of side effects" improperly adds: (1) a comparison to immediate-release guanfacine formulations and (2) a limitation regarding the "severity" of side effects".[26]

Both of these added concepts are not in the claim language.  And the second addition -- "severity" -- is something explicitly explained in the specification as a different parameter of "side effects" from "likelihood".  *See* Pltfs Opening Brief at 36-37 (citing the '794 patent at Col. 3, lines 50-55, wherein side effects are characterized in distinct ways, including: their "number", their "likelihood" or their "severity"; only "likelihood" is referred to in the claims).

6.  **The Court Should Reject Sandoz's Proposed Construction for the Disputed Term "pharmaceutically active agent that is pH dependent"**

| "pharmaceutically active agent that is pH dependent" | |
| --- | --- |
| **Plaintiffs** | **Sandoz** |
| no construction needed—plain and ordinary meaning | a molecule that provides activity in the body and that has pH-dependent aqueous solubility |

---

[26] D.I. 90 at 28-29.

Sandoz's construction for this term adds only ambiguity to what should be a straightforward definition. It asks the Court to construe "pharmaceutically active agent that is pH dependent" to mean "a molecule that provides activity in the body that has pH-dependent aqueous solubility."[27] It is unclear what "activity" Sandoz refers to and how a molecule "provides" such activity. Further, Sandoz's reference to "aqueous solubility" creates further ambiguity as to what media the solubility should be tested in; and injects words into the construction that are not present in the claim.

### 7.   The Court Should Reject Sandoz's Proposed Construction for the Disputed Terms Relating to "about percentage weights"

Various claim terms in the patents-in-suit use the phrase "about". "About" is commonly used in patent claims and it is classically understood to mean "approximately" (without any particular numerical bound) and is also understood not to be indefinite when so construed. *See* Pltfs Op. Brief at 40-42 (citing cases).

## III.   Conclusion

For at least the reasons set forth above and in Plaintiffs Opening Brief, the Court should adopt Plaintiffs' proposed constructions and reject Sandoz's constructions for the disputed claim terms of the '290, '599, and '794 patents.

Respectfully submitted,

DAVIS GRAHAM & STUBBS LLP

By:  /s Thomas C. Bell/
Thomas C. Bell
1550 Seventeenth St.
Suite 500
Denver, Colorado  80202
Email: tom.bell@dgslaw.com

---

[27] D.I. 90 at 17.

Telephone: (303) 892-9400
Facsimile: (303) 893-1379

Of Counsel:
Edgar H. Haug
Sandra Kuzmich
Jason Lief
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Email: ehaug@flhlaw.com
Email: skuzmich@flhlaw.com
Email: jlief@flhlaw.com
Email: rbardenstein@flhlaw.com
Telephone: (212) 588-0800
Facsimile: (212) 588-0500

Gregory F. Wesner
Elizabeth J. Weiskopff
Frommer Lawrence & Haug LLP
1191 2nd Avenue
Suite 2000
Seattle, Washington 98101
Email: gwesner@flhlaw.com
Email: eweiskopff@flhlaw.com
Tel: (206) 336-5690
Fax: (206) 336-5691

Bryan Braunel (Pro Hac Vice motion to be filed)
Rami Bardenstein
Frommer Lawrence & Haug LLP
1667 K Street NW
Suite 500
Washington DC 20006
Email: bbraunel@flhlaw.com
Email: rbardenstein@flhlaw.com
Tel: (202) 292-1530
Fax: (202) 292-1531

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Thomas C. Bell, hereby certify that on March 16, 2012, I served a true and correct copy

of PLAINTIFFS' REBUTTAL CLAIM CONSTRUCTION BRIEF on the counsel of record

listed below in the manner indicated:

Edward C. Stewart
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Telephone:  303.244.1800
Facsimile:  303.244.1879
E-mail: stewart@wtotrial.com

and

Richard T. Ruzich
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone:  312.499.6783
Facsimile:  312.896.5652
Email: rtruzich@duanemorris.com

Laura A. Vogel
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA  02110
Telephone:  857-488-4284
Facsimile:  857-401-3045
Email:  lavogel@duanemorris.com

*Attorneys for Defendant Sandoz Inc.*

s/ Thomas C. Bell
Thomas C. Bell